# Exhibit A – Complaint

**FILED**
2022 APR 04 12:57 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 22-2-04781-0 SEA

SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR KING COUNTY

LYLE WAMMER,

                     Plaintiff,

     vs.

CHIEF SEATTLE COUNCIL, BOY
SCOUTS OF AMERICA; CORPORATION
OF THE PRESIDING BISHOP OF THE
CHURCH OF JESUS CHRIST OF
LATTER-DAY SAINTS; CORPORATION
OF THE PRESIDENT OF THE CHURCH
OF JESUS CHRIST OF LATTER-DAY
SAINTS AND SUCCESSORS; and BURIEN
WARD OF THE CHURCH OF JESUS
CHRIST OF LATTER-DAY SAINTS,
BURIEN, WASHINGTON,

                     Defendants.

NO. _____

COMPLAINT FOR DAMAGES

Plaintiff Lyle Wammer, by and through his attorneys, Michael T. Pfau, Jason P. Amala, Vincent T. Nappo, and Benjamin B. Watson of Pfau Cochran Vertetis Amala PLLC, respectfully alleges for his complaint the following:

## I.    INTRODUCTION

1.    This case arises from childhood sexual abuse and exploitation that Plaintiff Lyle Wammer suffered at the hands of the Defendants' Scout leader and adult volunteer, Franklin L.

COMPLAINT FOR DAMAGES
1 of 15

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
403 Columbia Street, Suite 500
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

Mathias, who the Defendants knew or should have known posed a danger to him and other children. Despite their knowledge, the Defendants failed to take reasonable steps to protect Plaintiff Lyle Wammer from the danger of being sexually abused by Franklin L. Mathias. As a result, Franklin L. Mathias was able to use his position as a Scout leader and adult volunteer with the Defendants to sexually abuse Plaintiff Lyle Wammer.

## II.   PARTIES

2.   Plaintiff Lyle Wammer is an adult male who currently resides in Burien, Washington.

3.   At all relevant times Plaintiff was a minor participating in the Boy Scouts of America program that was operated and controlled by Defendants Chief Seattle Council, Boy Scouts of America; Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints; Corporation of the President of the Church of Jesus Christ of Latter-day Saints and Successors; and Burien Ward of the Church of Jesus Christ of Latter-day Saints, Burien, Washington (all Defendants are collectively referred to herein as "the Defendants").

4.   Franklin L. Mathias ("Mathias") was a Scout leader or volunteer that the Defendants used and relied upon as a Scout leader and volunteer to serve Plaintiff and other children who participated in their Boy Scout program, including as an LDS elder and a Scout merit badge counselor of Plaintiff's Boy Scout Troop.

5.   During the time that Mathias served as a Scout leader and volunteer for the Defendants, he used his position to groom and to sexually abuse Plaintiff.

6.   At all relevant times Defendant Chief Seattle Council, Boy Scouts of America ("CSC") was a Washington nonprofit corporation organized under Washington law with its principal place of business in Seattle, Washington, that transacted business in King County.

7.   At all relevant times CSC conducted business as "Chief Seattle Council, Boy Scouts of America," "Chief Seattle Council, Inc., Boy Scouts of America," "Chief Seattle Council, Boy

COMPLAINT FOR DAMAGES
2 of 15

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
403 Columbia Street, Suite 500
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

Scouts of America, Inc.," "Chief Seattle Council of the Boy Scouts of America," "Chief Seattle Council, Inc.," "Chief Seattle Council," "CS Council," and "CSC."

8.    To the extent that CSC was a different entity, corporation, or organization during the period of time in which Mathias used his position as a Scout leader and volunteer to sexually abuse Plaintiff, such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in the caption and in this complaint as Chief Seattle Council, Boy Scouts of America.

9.    To the extent that CSC is a successor to a different entity, corporation, or organization which existed during the period of time during which Mathias used his position as a Scout leader and volunteer to sexually abuse Plaintiff, including any entity, corporation, or organization that subsequently or eventually merged into CSC, such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in the caption and in this complaint as Chief Seattle Council, Boy Scouts of America.

10.    All such CSC-related entities, corporations, or organizations are collectively identified and referred to herein as "CSC."

11.    At all relevant times Defendant Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints ("LDS Bishop") was a foreign religious corporation sole incorporated in the State of Utah that was registered to conduct business in the State of Washington.

12.    At all relevant times LDS Bishop conducted business as "Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints," "Presiding LDS Bishop," "LDS Bishop," "Church of Jesus Christ of Latter-day Saints," "LDS Church," and "LDS."

13.    To the extent that LDS Bishop was a different entity, corporation, or organization during the period of time in which Mathias used his position as a Scout leader and adult volunteer to sexually abuse Plaintiff, such entity, corporation, or organization is hereby on notice that it is

COMPLAINT FOR DAMAGES
3 of 15

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
403 Columbia Street, Suite 500
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

intended to be a defendant in this lawsuit and is named in the caption and in this complaint as Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints.

14.    To the extent that LDS Bishop is a successor to a different entity, corporation, or organization which existed during the period of time during which Mathias used his position as a Scout leader and adult volunteer to sexually abuse Plaintiff, including any other entity, corporation, or organization that subsequently or eventually merged into LDS Bishop, such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in the caption and in this complaint as Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints.

15.    All such LDS Bishop-related entities, corporations, or organizations are collectively identified and referred to herein as "LDS Bishop."

16.    At all relevant times the Defendant Corporation of the President of the Church of Jesus Christ of Latter-day Saints and Successors ("LDS President") was a foreign religious corporation sole incorporated in the State of Utah that was registered to conduct business in the State of Washington.

17.    At all relevant times LDS President conducted business as "Corporation of the President of the Church of Jesus Christ of Latter-day Saints and Successors," "LDS President," "Church of Jesus Christ of Latter-day Saints," "LDS Church," and "LDS."

18.    To the extent that LDS President was a different entity, corporation, or organization during the period of time in which Mathias used his position as a Scout leader and adult volunteer to sexually abuse Plaintiff, such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in the caption and in this complaint as Corporation of the President of the Church of Jesus Christ of Latter-day Saints and Successors.

19.    To the extent that LDS President is a successor to a different entity, corporation, or organization which existed during the period of time during which Mathias used his position as a Scout leader and adult volunteer to sexually abuse Plaintiff, including any other entity,

COMPLAINT FOR DAMAGES
4 of 15

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
403 Columbia Street, Suite 500
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

corporation, or organization that subsequently or eventually merged into LDS President, such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in the caption and in this complaint as Corporation of the President of the Church of Jesus Christ of Latter-day Saints and Successors.

20. All such LDS President-related entities, corporations, or organizations are collectively identified and referred to herein as "LDS President."

21. At all relevant times Defendant Burien Ward of the Church of Jesus Christ of Latter-day Saints, Burien, Washington ("Burien Ward") was an unincorporated entity that conducted business in the State of Washington.

22. At all relevant times Burien Ward conducted business as "Burien Ward of the Church of Jesus Christ of Latter-day Saints, Burien, Washington," "Burien Ward of the Church of Jesus Christ of Latter-day Saints," "LDS Burien Ward," "Burien Ward," "Church of Jesus Christ of Latter-day Saints," "LDS Church," and "LDS."

23. To the extent that Burien Ward was a different entity, corporation, or organization during the period of time in which Mathias used his position as a Scout leader and adult volunteer to sexually abuse Plaintiff, such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in the caption and in this complaint as Burien Ward of the Church of Jesus Christ of Latter-day Saints, Burien, Washington.

24. To the extent that Burien Ward is a successor to a different entity, corporation, or organization which existed during the period of time during which Mathias used his position as a Scout leader and adult volunteer to sexually abuse Plaintiff, including any other entity, corporation, or organization that subsequently or eventually merged into Burien Ward, such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in the caption and in this complaint as Burien Ward of the Church of Jesus Christ of Latter-day Saints, Burien, Washington.

COMPLAINT FOR DAMAGES
5 of 15

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
403 Columbia Street, Suite 500
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

25. All such Burien Ward-related entities, corporations, or organizations are collectively identified and referred to herein as "Burien Ward."

26. Given their relationship, LDS Bishop, LDS President, and Burien Ward are collectively referred to below as "LDS."

27. As part of LDS' religious mission, LDS authorized and selected leaders to educate and minister to larger geographic areas known as "Stakes," and sub-units of Stakes known as "Wards."

28. As part of their duties for LDS, the leaders of the Burien Ward, a subdivision of the Seattle Washington Stake, selected, in the form of "callings," various church administrators, spiritual leaders, home teachers, Boy Scout leaders, Boy Scout assistant leaders, and Boy Scout volunteers to interact with, as well as educate and minister to, boys involved in the Ward's Boy Scout program.

29. At all relevant times all of these Ward and Stake leaders and volunteers, including Mathias, were acting as agents of LDS.

### III.   JURISDICTION AND VENUE

30. This Court has jurisdiction over this action pursuant to RCW 2.08.010, RCW 4.96 *et seq.*, and the Washington State Constitution.

31. Venue is proper because at all relevant times Defendant Chief Seattle Council, Boy Scouts of America was a nonprofit corporation authorized to transact business in Washington with its principal place of business located in Seattle, Washington.

32. Venue is proper because Plaintiff currently resides in Burien, Washington.

### IV.   STATEMENT OF FACTS

33. Plaintiff Lyle Wammer repeats and re-alleges the above allegations.

34. At all relevant times CSC, through its agents, servants, and employees, managed, maintained, operated, and controlled Boy Scout Troops, Cub Scout Troops, other Scout Troops,

COMPLAINT FOR DAMAGES
6 of 15

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
403 Columbia Street, Suite 500
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

and Boy Scout camps in Washington, including the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by its Scout leader and volunteer, Mathias.

35. At all relevant times CSC, through its agents, servants, and employees, managed, maintained, operated, and controlled the Scout leaders and volunteers of Boy Scout Troops, Cub Scout Troops, other Scout Troops, and Boy Scout camps in Washington, including the Scout leaders and volunteers of the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by one of those Scout leaders, Mathias.

36. LDS obtained a charter agreement from the Boy Scouts of America and CSC that allowed and enabled LDS to operate and control Plaintiff's Boy Scout Troop subject to the rules, regulations, and control of CSC.

37. At all relevant times the Defendants, through their agents, servants, and employees, managed, maintained, operated, and controlled the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by the Defendants' Scout leader and volunteer, Mathias.

38. At all relevant times the Defendants, through their agents, servants, and employees, held out their agents, servants, and employees to the public as those who managed, maintained, operated, and controlled the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by one of their Scout leaders and volunteers, Mathias.

39. At all relevant times the Defendants were responsible for the hiring and staffing, and did the hiring and staffing, for the Scout leaders and volunteers of the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by their Scout leader and volunteer, Mathias.

40. At all relevant times the Defendants were responsible for the recruitment and staffing of the Scout leaders and volunteers for the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by their Scout leader and volunteer, Mathias.

41. At all relevant times the Defendants were responsible for supervising the Scout leaders and volunteers for the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by their Scout leader and volunteer, Mathias.

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
403 Columbia Street, Suite 500
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

42. At all relevant times the Defendants held themselves out to the public as the owners of the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by their Scout leader and volunteer, Mathias.

43. At all relevant times the Defendants materially benefited from the operation of the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by the Defendants' Scout leader and volunteer, Mathias, including the services of Mathias and the services of those who managed and supervised Mathias.

44. At all relevant times the Defendants, through their agents, servants, and employees, managed, maintained, operated, and controlled the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by the Defendants' Scout leader and volunteer, Mathias, including its leaders and volunteers.

45. At all relevant times the Defendants, through their agents, servants, and employees, managed, maintained, operated, and controlled the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by the Defendants' Scout leader and volunteer, Mathias, including its policies and procedures regarding the sexual abuse of children.

46. At all relevant times Mathias was a Scout leader and volunteer of the Defendants who Plaintiff believes held the position of LDS Elder and Scout merit badge counselor of the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by Mathias.

47. At all relevant times Mathias was on the staff of, was an agent of, or served as an employee or volunteer of the Defendants.

48. At all relevant times Mathias was acting in the course and scope of his position with the Defendants.

49. When Plaintiff was a minor, he registered with the Defendants as a member of their Boy Scout Troop and paid them a fee to participate as a member of their Boy Scout Troop, including its meetings, camping trips, merit badge activities, and other outings.

COMPLAINT FOR DAMAGES
8 of 15

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
403 Columbia Street, Suite 500
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

50.     At all relevant times the Defendants, through their agents, servants, and employees, held Mathias out to the public, to Plaintiff, and to his parents, as their agent.

51.     At all relevant times the Defendants, through their agents, servants, and employees, held Mathias out to the public, to Plaintiff, and to his parents, as having been vetted, screened, and approved to serve as one of their Scout leaders and volunteers.

52.     At all relevant times Plaintiff and his parents reasonably relied upon the acts and representations of the Defendants, through their agents, servants, and employees, and reasonably believed that Mathias was one of their agents who was vetted, screened, and approved to serve as one of their Scout leaders and volunteers.

53.     At all relevant times Plaintiff and his parents trusted Mathias because the Defendants held him out as someone who was safe and could be trusted with the supervision, care, custody, and control of Plaintiff.

54.     At all relevant times Plaintiff and his parents believed that the Defendants would exercise such care as would a parent of ordinary prudence in comparable circumstances when those Defendants assumed supervision, care, custody, and control of Plaintiff.

55.     LDS chartered the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by the Defendants' Scout leader and volunteer, Mathias.

56.     LDS hosted the meetings of Plaintiff's Boy Scout Troop and organized the Troop's Scouting activities and events, including meetings, camping trips, merit badge activities, and other outings.

57.     The Defendants were responsible for selecting and supervising the Scout leaders and volunteers of Plaintiff's Boy Scout Troop, including the Troop's Scout leader and volunteer, Mathias, when he used that position with the Defendants to sexually abuse Plaintiff.

58.     When Plaintiff was a minor, Mathias used his position as the Defendants' Scout leader and volunteer to sexually abuse him.

COMPLAINT FOR DAMAGES
9 of 15

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
403 Columbia Street, Suite 500
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

59. Plaintiff was sexually abused by Mathias when Plaintiff was approximately 14 years old.

60. Based on the representations of the Defendants that Mathias was safe and trustworthy, Plaintiff and his parents allowed Plaintiff to be under the supervision of, and in the care, custody, and control of the Defendants, including when Plaintiff was sexually abused by Mathias.

61. Neither Plaintiff nor his parents would have allowed him to be under the supervision of, or in the care, custody, or control of the Defendants, or Mathias, if the Defendants had disclosed to Plaintiff or his parents that Mathias was not safe and was not trustworthy, and that he in fact posed a danger to Plaintiff in that Mathias was likely to sexually abuse Plaintiff.

62. Neither Plaintiff nor his parents would have paid the Defendants to allow him to be a member of their Boy Scout Troop, or to participate in their Scouting activities, if the Defendants had disclosed to Plaintiff or his parents that Mathias was not safe and was not trustworthy, and that he in fact posed a danger to Plaintiff in that Mathias was likely to sexually abuse Plaintiff.

63. Neither Plaintiff nor his parents would have paid the Defendants to allow him to be a member of their Boy Scout Troop, or to participate in their Scouting activities, if the Defendants had disclosed to Plaintiff or his parents that they knew for years that sexual predators, like Mathias, were using their positions as Scout leaders and volunteers to groom and to sexually abuse children.

64. No parent of ordinary prudence in comparable circumstances would have allowed Plaintiff to be under the supervision of, or in the care, custody, or control of the Defendants or Mathias if the Defendants had disclosed to Plaintiff or his parents that Mathias was not safe and was not trustworthy, and that he in fact posed a danger to Plaintiff in that Mathias was likely to sexually abuse him.

65. In approximately 1972, Mathias used his position of trust and authority as a Scout leader and volunteer of the Defendants to groom Plaintiff and to sexually abuse him, including

COMPLAINT FOR DAMAGES
10 of 15

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
403 Columbia Street, Suite 500
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

during Scout merit badge activities when Plaintiff was under the supervision of, and in the care, custody, or control of, the Defendants.

66.    The Defendants' Scout leader and volunteer, Mathias, sexually abused Plaintiff multiple times.

67.    The sexual abuse by the Defendants' Scout leader and volunteer, Mathias, included, but was not limited to, Mathias fondling and masturbating Plaintiff.

68.    The sexual abuse by the Defendants' Scout leader and volunteer, Mathias, occurred using property that was owned, operated, and/or controlled by the Defendants, including, but not limited to, Mathias' residence during Scout merit badge activities, during which time Plaintiff was in the care, custody, or control of the Defendants.

69.    The sexual abuse by the Defendants' Scout leader and volunteer, Mathias, occurred during activities that were sponsored by the Defendants, or directly as a result of activities that were sponsored by the Defendants, including, but not limited to, Scout merit badge activities.

70.    At all relevant times the Defendants, through their agents, servants, and employees, knew or should have known that Mathias was a sexual abuser of children who would use his position with them to sexually abuse Plaintiff and other children.

71.    The Defendants knew or should have known that Mathias was likely to sexually abuse children, including Plaintiff.

72.    At all relevant times the Defendants, through their agents, servants, and employees, knew or should have known that the sexual abuse by Mathias of Plaintiff was ongoing.

73.    At all relevant times it was reasonably foreseeable to the Defendants, through their agents, servants, and employees, that Mathias' sexual abuse of children would likely result in injury to others, including the sexual abuse of Plaintiff and other children by Mathias.

74.    Before and during the time Mathias sexually abused Plaintiff, the Defendants, through their agents, servants, and employees, knew or should have known that Mathias was sexually abusing Plaintiff and other children.

COMPLAINT FOR DAMAGES
11 of 15



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
403 Columbia Street, Suite 500
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

75. The Defendants, through their agents, servants, and employees, knew or should have known before and during Mathias' sexual abuse of Plaintiff that Scout leaders, volunteers, and other persons who worked with youth, including other Scout leaders and volunteers, had used their positions to groom and to sexually abuse children.

76. The Defendants, through their agents, servants, and employees, knew or should have known before and during Mathias' sexual abuse of Plaintiff that such Scout leaders, volunteers, and other persons who worked with youth could not be "cured" through treatment or counseling.

77. The Defendants, through their agents, servants, and employees, concealed the sexual abuse of children by Mathias in order to conceal their own bad acts in failing to protect children from him, to protect their own reputation, and to prevent victims of such sexual abuse by Mathias and other Scout leaders and volunteers from coming forward during the extremely limited statute of limitations, despite knowing that Mathias and other abusers in their ranks would continue to molest children.

78. The Defendants, through their agents, servants, and employees, consciously and recklessly disregarded their knowledge that Mathias would use his position with the Defendants to sexually abuse children, including Plaintiff.

79. The Defendants, through their agents, servants, and employees, disregarded their knowledge that Mathias would use his position with them to sexually abuse children, including Plaintiff.

80. The Defendants, through their agents, servants, and employees, acted in concert with each other and/or with Mathias to conceal the danger that Mathias posed to children, including Plaintiff, so that Mathias could continue serving them despite their knowledge of that danger.

81. The Defendants, through their agents, servants, and employees, knew that their negligent, willful, wanton, reckless, and outrageous conduct would inflict severe emotional and

COMPLAINT FOR DAMAGES
12 of 15

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
403 Columbia Street, Suite 500
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

psychological distress, as well as personal physical injury, on others, including Plaintiff, and he did in fact suffer severe emotional and psychological distress and personal physical injury as a result of their wrongful conduct.

82.    By reason of the wrongful acts of the Defendants as detailed herein, Plaintiff sustained physical and psychological injuries, including but not limited to, severe emotional and psychological distress, humiliation, fright, dissociation, anger, depression, anxiety, family turmoil and loss of faith, a severe shock to his nervous system, physical pain and mental anguish, and emotional and psychological damage, and, upon information and belief, some or all of these injuries are of a permanent and lasting nature, and Plaintiff has and/or will become obligated to expend sums of money for treatment.

## V.    CAUSES OF ACTION

### A.    Negligence

83.    Plaintiff Lyle Wammer repeats and re-alleges all of his allegations above and below.

84.    The Defendants had a duty to take reasonable steps to protect Plaintiff from foreseeable harm when he was in their care, custody, and control, including when he was a paying member of their Boy Scout Troop and when he was participarting in their Scouting activities.

85.    The Defendants also had a duty to take reasonable steps to prevent Mathias from using the tasks, premises, and instrumentalities of his position as their Scout leader and volunteer to target, groom, and sexually abuse children, including Plaintiff.

86.    The Defendants had a duty to warn, train, or educate their Scout leaders, adult volunteers, and youth members, including Plaintiff, about the danger of sexual abuse by Scout leaders and volunteers who were involved in their Scouting program and how to avoid or minimize such danger.

COMPLAINT FOR DAMAGES
13 of 15

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
403 Columbia Street, Suite 500
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

87.    The Defendants breached each of the foregoing duties by failing to exercise reasonable care to prevent their Scout leader and volunteer, Mathias, from harming Plaintiff, including sexually abusing him.

88.    In breaching their duties, including hiring, retaining, and failing to supervise Mathias; giving Mathias access to children; entrusting their tasks, premises, and instrumentalities to Mathias; failing to train their personnel in the signs of sexual predation and to protect children from sexual abuse and other harm; failing to warn Plaintiff, his parents, and other parents of the danger of sexual abuse; and failing to create a safe and secure environment for Plaintiff and other children who were under their supervision and in their care, custody, and control, the Defendants created a foreseeable risk that Plaintiff would be sexually abused by Mathias.

89.    As a direct and proximate result of the acts and omissions of the Defendants, their Scout leader and volunteer, Mathias, groomed and sexually abused Plaintiff, which has caused Plaintiff to suffer general and special damages in an amount to be proven at trial.

## VI.    PRAYER FOR RELIEF

Plaintiff Lyle Wammer respectfully prays for the following relief against Defendants:

a.    That the Court award Plaintiff monetary relief to include all special and general damages established at trial;

b.    That the Court award Plaintiff his costs, reasonable attorney fees, and any statutory interest applicable under law or equity;

c.    That the Court award Plaintiff pre-judgment interest on items of special damages;

d.    That the Court award Plaintiff post judgment interest; and

e.    That the Court award Plaintiff such other relief, under law or equity, as the Court may deem just and proper.

//

//

//

//

COMPLAINT FOR DAMAGES
14 of 15

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
403 Columbia Street, Suite 500
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

DATED this 4th day of April 2022.

PFAU COCHRAN VERTETIS AMALA PLLC

By _____

Michael T. Pfau, WSBA No. 24649
michael@pcvalaw.com
Jason P. Amala, WSBA No. 37054
jason@pcvalaw.com
Vincent T. Nappo, WSBA No. 44191
vnappo@pcvalaw.com
Benjamin B. Watson, WSBA No. 56767
bwatson@pcvalaw.com

*Attorneys for Plaintiff*

COMPLAINT FOR DAMAGES
15 of 15

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

403 Columbia Street, Suite 500
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624